UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

ROGER ALLEN BUIS &              Case No.: 05-31164-LMK
PAULINE REID BUIS,

        Debtors                 Chapter 13
_____/

**ORDER ON MOTION TO DISMISS OR CONVERT**

This case came on for hearing on the motion of Army Aviation Heritage Foundation and Museum, Inc. (AAHF) to dismiss this case or to convert it to a case under chapter 7. An evidentiary hearing was conducted at which AAHF urged the court to convert the case instead of dismissing it. Conversely, the debtor asked that, if the Court was inclined to grant AAHF's Motion, that their case be dismissed rather than converted to one under chapter 7. Based on the evidence presented, I find that the case should be dismissed. This constitutes my findings of fact and conclusions of law in accordance with Rule 7052 Fed. R. Bankr. P.

**FACTS**

This chapter 13 case arose out of a dispute between the debtors, their operating company, Otto Airshows Inc. and AAHF. The result was a lawsuit in which AAHF was granted summary judgment as to liability against the debtors and their company for defamation and for violation of the Florida Unfair and Deceptive Trade Practices Act. The Debtor, Roger Buis, is a retired Army helicopter pilot who still makes his living flying helicopters. In 2000, he and his wife purchased an air show business consisting of a helicopter, a trailer, and props from Robert and Annette

Hosking d/b/a A. & B. Helicopters. The purchase price was $275,000, financed by the sellers on an unsecured basis. The debtors formed Otto Airshows and decorated the helicopter as a clown (Otto the Clown). They performed in air shows and would take passengers on flights for a fee.

In 2003, according to the Order granting summary judgment in Case No. 3:03cv554/RV in the United States District Court for the Northern District of Florida, the debtors began making allegations of safety deficiencies against AAHF, a competitor. These allegations were made to the FAA, to the president of the International Council of Air Shows, a trade association that represents individuals in the air show business, and to the Aircraft Owners and Pilots Association. AAHF filed its lawsuit and on October 29, 2004, the Order granting summary judgment as to liability in favor of AAHF was entered. Following the entry of the summary judgment, the debtors consulted a bankruptcy lawyer to assist them in bankruptcy planning to avoid losing their assets to AAHF at such time as damages were assessed. On November 29, 2004, they executed a promissory note and security agreement in favor of the Hoskings, securing the sum of $117,500 remaining on the purchase price of their business. As collateral, they pledged a Cessna 150 airplane and a Bell 47 helicopter, neither of which were part of the purchase from the Hoskings. Both aircraft were unencumbered prior to the execution of the agreement. At the same time, the debtors pledged another unencumbered aircraft, a Cessna 150 to W.H.F. Wiltshire, their attorney in the district court litigation, as security for payment of his fees (although the debtors listed those fees as "disputed" in their bankruptcy schedules). These liens were perfected by recordation with the FAA on January 21, 2005.

In April, 2005, the parties went to mediation in their lawsuit but were unsuccessful. At that time, the debtors ceased doing business as Otto Airshows and formed a new corporation,

Prop and Rotor Aviation, Inc., as part of their pre- bankruptcy planning. Whereas the debtors had each been 50% owners of Otto Airshows, they gave their son 50% ownership in Prop and Rotor. While the debtors continued to own the property used in the air show business, they entered into a Property Management Agreement with Prop and Rotor to lease the property to the corporation and to operate it under the corporate name. This agreement was prepared and executed in April or May of 2005 but backdated to November 24, 2004.

On May 19, the debtors filed the instant chapter 13 case and also filed a chapter 7 case for Otto Airshows. Their initial chapter 13 plan in this case proposed to leave all of their secured creditors, except for Mr. Wiltshire, unimpaired, paying them in accordance with the terms of their notes and security agreements. Mr. Wiltshire would receive his collateral with any deficiency to be treated as an unsecured claim. Unsecured creditors would receive a pro-rata share, after payment of trustees fees and expenses and $2,000 for debtors' attorney's fees, of $450.77 to be paid over 36 months. The plan made no mention at all of AAFH or its claim. The schedules and statement of affairs (SOA) contained a number of significant omissions, including the failure to list AAHF as a creditor at all. AAHF was scheduled in the filings for Otto Airshows, Inc., but not in this case. Additional omissions included the following:

    1. The failure to list in item 10 of their SOA the transfers on November 29, 2004, of aircraft to secure existing debts;

    2. The failure to list the Property Management Agreement with Prop and Rotor as either a lease or an executory contract;

    3. The failure to list in item 4 of their SOA the settlement of a lawsuit on December 13, 2004, in which they received $55,000 (less fees for their attorney) or to account for disposition of

the proceeds;

    4. The failure to list a Kubota lawn tractor valued at $10,000 and a 7.5 KW generator valued at $400 on their schedules.

The debtors amended their schedules to correct the forgoing omissions on the day of the hearing on the instant motion. They also filed an amended chapter 13 plan which proposed to surrender all of their aircraft and the pickup truck used to tow their show helicopter to the secured creditors, and to pay $3260.65 per month to the chapter 13 trustee for 36 months. Except for the debt to AAHF and the secured creditors, the debtors schedules reflect a total of $30,258.95 in unsecured debt owed on three credit cards. When the undersecured portion of the claims of the secured creditors, as reflected in the debtors' schedules, are considered, the total unsecured debt is $274,926.64 without even considering the claim of AAHF. AAHF initially filed its proof of claim in the amount of $1,750,000 representing unliquidated damages it was seeking in the lawsuit against the debtors. It subsequently filed an amended proof of claim on November 10, 2005 reflecting a liquidated amount of $238,282.89, representing attorney's fees incurred in the litigation and assessable against the debtors as a result of the summary judgment as to liability. If determined to be a liquidated, non-contingent claim, the AAHF claim, when added to the other scheduled unsecured claims would put the total well over the $307,675 eligibility requirement as contained in section 109(e) of the Bankruptcy Code.

The motion and supporting memoranda of AAHF assert two grounds for conversion (or dismissal) of this case. It asserts that the case was filed in bad faith in an effort to avoid payment to AAHF for their defamatory conduct and unfair trade practices and that they are not eligible to be debtors under chapter 13. Based on the facts as set forth herein and on the debtor's admission

in court that but for the lawsuit, they would not have filed bankruptcy, I conclude that the debtors are not eligible for chapter 13 relief and that this case was filed in bad faith as to AAHF.

## DISCUSSION

AAHF first argues that the debtors' case should be dismissed or converted to chapter 7 because the debtors are ineligible to be debtors under chapter 13 due to the size of their unsecured debt. Section 109(e) of the Bankruptcy Code provides that [o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). Although the debtors list only $30,258.95 in unsecured debts in their schedules, it is well settled that the unsecured portion of a chapter 13 debtor's undersecured debt must also be included with other unsecured debt for purposes of determining whether debtor's total unsecured debt exceeds the $307,675, rendering him ineligible to be a chapter 13 debtor. *See Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975; *Ficken v. United States* (*In re Ficken*), 2 F.3d 299 (8th Cir. 1993); *Brown & Co. Sec. Corp. v. Balbus* (*In re Balbus*), 933 F.2d 246 (4th Cir. 1991). As a result, the amount of noncontingent, liquidated, unsecured debts scheduled by the debtors is $274,926.64, which is $32,748.36 below the § 109(e) limit.

AAHF claims attorney's fees of $238,282.89 incurred in its litigation against the debtor for violation of the Florida Unfair and Deceptive Trade Practices Act. Adding this amount to the debtors' scheduled unsecured debt would increase the debtors' total unsecured debt owed as of the date of the petition to $513,209.53, well over the § 109(e) limit. This amount will properly be added in if the debt for attorney's fees is both noncontingent and liquidated. Since summary judgment was granted to AAHF by the district court as to liability, AAHF's entitlement to

attorney's fees is established under Florida Statute §501.2105.[1]   A debt is not contingent "where all events giving rise to a debtor's liability occur pre-petition," *In re Winston*, 309 B.R. 61, 64(Bankr. M.D. Fla. 2004)(citations omitted).  The event giving rise to the debtors' liability for attorney's fees occurred pre-petition upon the District Court's grant of summary judgment to AAHF as to the liability of the debtors under the Florida Unfair and Deceptive Trade Practices Act.  Therefore, the only remaining question before me in determining the debtors' eligibility to file under chapter 13 is whether or not the claim for attorney's fees represents a liquidated claim.

Because the debtors filed their bankruptcy petition, AAHF was unable to obtain a specific amount ordered by the District Court, but this does not necessarily mean that AAHF's claim for attorney's fees is unliquidated.  "A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law." *United States v. Verdunn* (*In re Verdunn*), 89 F.3d 799, 802 (11th Cir. 1996)(citing *Black's Law Dictionary* 930 (6th ed. 1990).  The concept of a what is a liquidated debt is therefore linked to the amount of liability, rather than its mere existence.  *Verdunn*, 89 F.3d at 802.  A claim is unliquidated if the amount of the debt is dependent on a "future exercise of discretion, not restricted by specific criteria." *Id.*  In *Verdunn*, the IRS asserted that the debtor was ineligible for relief under chapter 13 because the deficiency he owed to the IRS put him above the debt limitations in place at that time.  The debtor argued that his tax liabilities were not liquidated on the petition date because the notice of deficiency he had received establishing the debt was insufficient to allow the bankruptcy court to

---

[1]Although AAHF also asserted attorney's fees under Florida Statute §57.105, which is analogous to Rule 11 of the Federal Rules of Civil Procedure, there was no finding by the District Court nor any showing that all the procedural requirements (*i.e.* service of motion 21 days prior to filing, or even the filing of a motion at all) have been met.  Although AAHF may not be entitled to fees under § 57.105, it is certainly entitled to them under § 501.2105

readily ascertain the amount of the debt. The bankruptcy and district courts agreed with the debtor, but the Eleventh Circuit reversed, holding that because the debt was computed through the application of fixed legal standards set forth in the tax code, it was liquidated. *Verdunn* at 802. Accordingly, a debt may still be considered liquidated if it is dependent on a future exercise of discretion, as long as such an exercise of discretion is restricted by specific criteria.

Florida Statute Section 501.2105, part of the Florida Unfair and Deceptive Trade Practices Act, provides that the prevailing party in a lawsuit under this Act may "receive his or her *reasonable* attorney's fees and costs from the nonprevailing party, " Fla. Stat. § 501.2105(1) (emphasis added). The statute further provides the method under which the prevailing party obtains such fees, which requires the attorney involved to submit a sworn affidavit of his time and costs. Fla. Stat. § 501.2105 (2, 3, & 4). The Florida Supreme Court has directed state courts (and presumably federal courts applying state law) to apply factors[2] set forth in Disciplinary Rule 2-106(b) in order to determine the reasonableness of fee awards. *In re Winston*, 309 B.R. 61 (Bankr. M.D. Fla. 2004). Although the exact amount of the debt for attorney's fees is dependent on a future exercise of discretion by the District Court, such a determination is restricted by this specific criteria and is not left to the District Court's unfettered

---

[2] (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 (3) The fee customarily charged in the locality for similar legal services.
 (4) The amount involved and the results obtained.
 (5) The time limitations imposed by the client or by the circumstances.
 (6) The nature and lent of the professional relationship with the client.
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 (8) Whether the fee is fixed or contingent.

discretion . Accordingly, a prior adjudication of "reasonableness" is not required in order to deem a claim for attorney's fees and costs "liquidated" for the purposes of Section 109(e) eligibility. *Winston*, 309 B.R. at 65 (holding amount of attorney's fees award was liquidated since the future exercise of discretion was restricted to a consideration of the listed factors). Since AAHF's attorney's fees and costs are capable of "verification against fixed legal standards,"[3] the amount of the debt is not dependent on the future exercise of unrestricted discretion, and the debt for attorney's fees is therefore liquidated. In any event, although it is conceivable that the District Court would not find the entire amount requested of $238,282.89 to be reasonable, it is inconceivable that it would find a reasonable amount to be less than the $32,748.36 difference between the amount of the other unsecured debt and the §109(e) eligibility amount, especially given that the debtors' own attorney's fees in defending the action brought by AAHF total over $180,000. Because the debt for attorney's fees is both noncontingent and liquidated, $238,282.89, the amount of such debt, must be added to the debtors' unsecured debt. The amount of the debtors' unsecured debts, $513,209.53, is above the maximum allowed under § 109(e) of the Bankruptcy Code; therefore, the debtors are ineligible to be debtors under chapter 13.

In addition to this case being dismissed because the debtors are ineligible, the debtors' case will also be dismissed for bad faith. Section 1307(c) provides that a chapter 13 case may be dismissed or converted "for cause." 11 U.S.C. § 1307. Section 1307 further provides a nonexclusive list of examples of what constitutes "cause" for dismissal. Although bad faith, or a lack of good faith, is not included in this list, bad faith can constitute cause for dismissal under

---

[3]*Id*.

Section 1307(c). *In re Alt*, 305 F.3d 413, 418 (6th Cir. 2002); *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999); *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992); *In re Cabral*, 285 B.R. 563, 572 (1st Cir. B.A.P. 2002); *In re Fretwell*, 281 B.R. 745, 749 (Bankr. M.D. Fla. 2002). The Bankruptcy Code imposes the requirement of good faith upon a debtor at both the time of the filing of the petition and at the time of the filing of the plan. *Cabral*, 285 B.R. at 572. "Good faith" is not defined by the Bankruptcy Code, but rather must be determined on a case-by-case basis through a consideration of the totality of the circumstances. *Love*, 957 F.2d at 1355.

In most cases, any inquiry into a chapter 13 debtor's good faith or lack thereof is conducted in conjunction with the hearing on the confirmation of the plan. *In re Hovind*, 197 B.R. 157, 160 (Bankr. N.D. Fla. 1996). The leading cases out of the Eleventh Circuit, *In re Kitchens*[4] and *In re Waldron*,[5] both focus on good faith in the proposition of the plan rather than in the initial filing of the petition. *Hovind*, 197 B.R. at 160. While good faith is an implicit requirement in the filing of a petition under chapter 13, it is an explicit requirement for the confirmation of a chapter 13 plan. The Bankruptcy Code provides, in relevant part, that "the court shall confirm a plan if . . . the plan has been proposed in good faith . . ." 11 U.S.C. § 1325(a)(3). To aid courts in determining whether or not a plan has been proposed in good faith, the Eleventh Circuit articulated the following factors as being relevant to this inquiry:

    (1)    the amount of the debtor's income from all sources;
    (2)    the living expenses of the debtor and his dependents;
    (3)    the amount of attorney's fees;
    (4)    the probable or expected duration of the debtor's Chapter 13 plan;

---

[4] *In re Kitchens*, 702 F.2d 885 (11th Cir. 885).

[5] *In re Waldron*, 785 F.2d 936 (11th Cir. 1986).

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) The burden which the plan's administration would place on the trustee;

*Kitchens*, 702 F.2d at 888. Additional relevant factors the Eleventh Circuit has considered include the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7 as well as the accuracy of the plan's statement of debts and expenses and whether any inaccuracies are an attempt to mislead the Court. *In re Smith*, 98 B.R. 44, 46 (Bankr. N.D. Fla. 1989).

Although the instant case is not yet up for consideration of confirmation, the *Kitchens* factors are still relevant in determining whether the plan, which was filed along with the petition, and the petition itself were filed in bad faith. The motivations, sincerity, and effort of the debtors, combined with the circumstances under which they came to file bankruptcy and their dealings with their creditors, AAHF in particular, clearly shows that the plan proposed by the debtors was not proposed in good faith. Indeed, the very language of the initial plan filed by the debtors demonstrates that both the plan and this case were filed in bad faith. That was the plan that left all of their secured creditors (except for their former attorney) unimpaired, paying them according to the terms of their notes and security agreements, including the undersecured portions of their claims, but paid unsecured creditors a total of $450.77 to share, pro-rata, over a

period of 36 months. AAHF was not even mentioned in this plan. This demonstrates that both the petition and the plan were filed in bad faith.

The *Kitchens* factors, which are considered in the context of plan confirmation, overlap somewhat with the factors that courts consider when determining whether a petition was filed in bad faith, which is the issue currently before this court. In connection with the totality of the circumstances determination of bad faith in the filing of the petition, courts have considered some or all of the following factors:

    (1)    the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding;

    (2)    the timing of the petition;

    (3)    how the debt arose;

    (4)    the debtor's motive in filing the petition;

    (5)    how the debtor's actions affected creditors;

    (6)    the debtor's treatment of creditors both before and after the petition was filed;

    (7)    whether the debtor has been forthcoming with the bankruptcy court and the creditors *Love,* 957 F.2d at 1357 (citations omitted);

    (8)    whether the debtor misrepresented facts in her petition, unfairly manipulated the Bankrtupcy Code, or otherwise filed her Chapter 13 petition in an inequitable manner;

    (9)    the debtor's history of filings and dismissals;

    (10)    whether the debtor only intended to defeat state court litigation;

    (11)    whether egregious behavior is present. *Cabral*, 285 B.R. at 573 (citations omitted).

A finding of bad faith does not require a finding of actual malice or fraudulent intent. *Leavitt*, 171 F.3d at 1224. In considering the totality of circumstances surrounding the debtors' filing of their petition, it is clear to me that this case was filed in bad faith and therefore should be

dismissed.[6]

First, the debtors did not accurately state their assets and liabilities on their initial bankruptcy petition. The debtors failed to list AAHF as a creditor, which is especially hard for the court to comprehend when the debtor admitted that it was AAHF's judgment that pushed them into bankruptcy. The debtors listed income on their schedules from "[r]ent from personal property lease," but did not list any such lease on Schedule D and did not report any income from leases in their statement of financial affairs or list any agreement with Prop and Rotor anywhere in their schedules or SOA. The debtors also did not disclose the $55,000.00 personal injury settlement they received pre-petition. In addition to all of these omissions, the debtors also "forgot" about a Kubota lawn tractor worth $10,000 and their generator, worth $400. The debtors did not amend their schedules to reflect any of this until the day of the hearing on this motion.

Next, the timing of the debtors petition leads to the conclusion of bad faith, in two ways. First, the debtors filed their chapter 13 petition after they were found liable in the District Court Action and after an unsuccessful mediation with AAHF, but before a final judgment could be entered. This is why only the amount for attorney's fees was included when considering the

---

[6]Some courts hold that a chapter 13 case should not be dismissed for lack of good faith prior to consideration of a chapter 13 plan. *See, e.g., In re Scott*, 166 B.R. 459 (Bankr. M.D. Fla. 1994). However, the Eleventh Circuit in *Waldron* stated that "whenever a chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives." Accordingly, although chapter 13 cases should not ordinarily be dismissed for lack of good faith prior to consideration of the chapter 13 plan, under circumstances in which the petition appears to be "tainted" with bad faith, such as this one, dismissal prior to formal consideration of the plan is appropriate. *See, e.g., Hovind*, 197 B.R. 157

amount of the debtors' unsecured debts above. It appears to me that the timing of the bankruptcy filing was an ultimately futile attempt to keep the debtors eligible to file for relief under chapter 13, because the debts owed to AAHF would be dischargeable in a chapter 13 (but nondischargeable in a chapter 7) because of the so-called chapter 13 "super discharge." *See In re Vickers*, 247 B.R. 530 (Bankr. M.D. Fla. 2000)(holding claim for violation of Florida Unfair and Deceptive Trade Practices Act was nondischargeable in a chapter 7). The other reason the timing of the petition is suspect involves the grant of security interests in previously unencumbered assets to secure pre-existing (and previously unsecured) debts. While the granting of these security interests may not be have been fraudulent transfers as a matter of law, they certainly would have been preferences subject to avoidance under § 547 of the Bankruptcy Code had they been made within 90 days of the filing of the petition. All of these transfers appear to have been made between 90 and 120 days pre-petition. Thus, the debtors granted these security interests, made sure they were perfected, waited 90 days so they would "stick," then filed their petition. The debtor admitted that he began planning to avoid AAHF's judgment through a Chapter 13 bankruptcy shortly after the adverse ruling on summary judgment in the District Court. The timing of the bankruptcy petition further demonstrates both the debtors' attempt to continue in their pre-petition pattern of egregious behavior towards AAHF and their bad faith in filing their petition.

Because I have determined that the debtors are ineligible to be debtors under Chapter 13 and that their petition was filed in bad faith, the only issue left is whether to convert this case to one under chapter 7 or dismiss it altogether. The decision to dismiss or convert a chapter 13 case under § 1307(c) is within the discretion of the bankruptcy court. *Blaise v. Wolinsky* (*In re*

13

*Blaise*), 219 B.R. 946, 950 (2d Cir. B.A.P. 1998). In deciding between conversion and dismissal, a court must consider "the best interests of the creditors and the estate." 11 U.S.C. § 1307(c). AAHF urges the court to convert the case, while the debtors argue for dismissal rather than conversion. AAHF asserts that a chapter 7 trustee is needed to investigate unscheduled assets, the disposition of assets, and allegedly preferential or fraudulent transfers. However, as mentioned above, any transfers that the debtors made that have been brought to the court's attention were either outside of the statutory preference period or not fraudulent as a matter of law. From a review of the debtors' amended schedules, there appear to be minimum unencumbered assets available for liquidation and distribution to unsecured creditors. Further, no other creditor has appeared in this case, and AAHF is the only creditor to have brought suit against the debtors pre-petition. The dismissal of this case would allow AAHF to get a final judgment issued by the District Court and then execute upon it. None of the purposes of the Bankruptcy Code would be served by converting the debtors' case to one under chapter 7 against their will. The money collected from a liquidation of the debtors' non-exempt and unencumbered property would be eaten up with fees and expenses, especially if the trustee was to embark upon the kind of inquiry suggested by AAHF. Should the case be converted to chapter 7, the court would merely be serving either as a vehicle to punish the debtors or as a collection service for AAHF. Neither is an efficient or appropriate use of this court's resources. Accordingly, I conclude that dismissal of this case, rather than conversion, is in the best interests of the creditors and of the estate.

## CONCLUSION

The total amount of the debtors' unsecured debt (consisting of the scheduled unsecured

debt, the scheduled unsecured portion of undersecured debt, and attorney's fees owed to AAHF) render the debtors ineligible for relief under chapter 13. Further, the debtors filed their petition in bad faith and it is in the creditors' and estate's best interests that this case be dismissed rather than converted to a case under chapter 7. Accordingly, it is hereby

ORDERED and ADJUDGED that AAHF's Motion is GRANTED. A separate final order will be entered in accordance herewith.

DONE and ORDERED on January 11, 2006.

*[signature]*

Lewis M. Killian, Jr.
Bankruptcy Judge

cc: All parties in interest